# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Chad Menter Hill,                                    Civil No. 16-03804 (SRN)

      Appellant,

                                **MEMORANDUM OPINION &**
v.                                                   **ORDER**

Daniel M. McDermott,

      Appellee.

---

Bradley A. Kirscher, Kirscher Law Firm, PA, 2489 Rice Street, Ste. 75, Roseville, Minnesota 55113, for Appellant.

Colin Kreuziger, Office of the United States Trustee, 300 S. 4th St., Ste, 1015, Minneapolis, MN 55415, for Appellee.

---

SUSAN RICHARD NELSON, United States District Judge

      Appellant Chad Menter Hill ("Hill") appeals from: (1) an October 19, 2016 Judgment of the United States Bankruptcy Court for the District of Minnesota ("Bankruptcy Court") in the matter of *McDermott v. Hill* (*In re Hill*), 14-BKY-35001, 15-ADV-3098, denying Hill's discharge under 11 U.S.C. § 727(a)(2)(A); and (2) a July 30, 2015 Order extending the deadline for the United States Trustee to file the complaint which ultimately lead to the denial of Hill's discharge. (Notice of Appeal [Doc. No. 1].) For the reasons set forth herein, the Bankruptcy Court's Order and Judgment are affirmed.

# I. BACKGROUND

In December of 2014, Hill filed a petition for relief under Chapter 7 of the Bankruptcy Code (the "bankruptcy petition" or "petition for discharge"). (Trustee's App. ("USTAPP") at 3–59,[1] Bankr. Pet. [Doc. No. 15].) Several months later, the United States Trustee[2] ("Trustee") filed a complaint objecting to Hill's discharge after becoming aware of Hill's ties to business entities that were under a Florida receivership order due to allegations of fraud. (*See* Appellant's App. ("APP") at 121–29, Compl. [Doc. No. 11-1].) Below, the Court recounts necessary details of the Florida action that are relevant to Hill's appeal, and then addresses the procedural background of this case.

## A. Factual Background

Appellant Hill is a chiropractor. (USTAPP at 182, Stipulation of Facts ¶ 3.) In April of 2013, he began work as a consultant to Diagnostic Pain Solutions, a chiropractic clinic. (*Id.* ¶ 4.) The business affairs of Diagnostic Pain Solutions were managed by Tri-Med Management, Inc. ("Tri-Med"), a company owned by Hill's childhood friend, Jeremy Anderson ("Anderson"). (*Id.*)

Starting in approximately July of 2013, Hill became associated with another business entity formed by Anderson, Interventional Pain Center, LLC ("IPC"). (*Id.* ¶ 6.) That month, Anderson had formed IPC with two doctors, Dr. Michael Mai ("Mai")—one of Hill's

---

[1] Citations to the parties' appendices here follow their internal pagination.

[2] The Trustee is an official of the United States Department of Justice appointed by the Attorney General to supervise the administration of bankruptcy cases. 28 U.S.C. §§ 581–89. The Trustee has statutory standing to commence an adversary proceeding objecting to discharge. 11 U.S.C. § 727(c)(1) ("The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section.").

chiropractic school classmates—and Dr. Steven Kazi. (*Id.* ¶ 4–5.) On July 12, 2013, IPC entered into a Business Associate Agreement with Tri-Med. (*Id.* ¶ 6.) In that agreement, Hill was identified as the vice-president of IPC. (*Id.*) Hill became part owner of IPC in September of 2013, when Mai resigned from IPC and relinquished his 95% interest in IPC to Hill. (*Id.* ¶ 7.)

On March 4, 2014, the Office of Financial Regulation of the State of Florida filed an enforcement action ("Florida enforcement action") against Anderson and Tri-Med, among others, alleging that they had defrauded hundreds of Florida investors. (*See* APP at 22–45, Florida Compl.) The Florida enforcement action sought a temporary and permanent injunction freezing the defendants' assets as well as the appointment of a receiver over Tri-Med's assets. (*Id.* at 44.) Neither Hill nor IPC were named as defendants in the Florida enforcement action. (*Id.* at 22.)

The next day, on March 5, 2014, a Florida court entered an order ("receivership order") freezing the defendants' assets and appointing Burton Wiand ("Wiand") as receiver. (*See* APP at 47–62, Order Imposing Temporary Inj.) The Florida court found that there was evidence that strongly suggested that Anderson, Tri-Med, and the other defendants had sold more than $13 million in unregistered securities in violation of Florida law, and had defrauded at least 232 Florida investors in what appeared to be a Ponzi scheme. (*Id.* at 48.) Concerned with further loss of investor funds, the Florida court prohibited Tri-Med and the other entities from disposing of any funds in their possession, and also prohibited "those persons in active concert or participating with" any of the defendants from accepting or depositing additional funds or in any way disposing of the defendants' assets. (*Id.* at 51–52.)

The Florida court tasked Wiand with the duty and authority to "marshal and safeguard" the defendants' properties and assets. (*Id*. at 55)

Just a few hours after entry of the receivership order, Tri-Med wired $300,000 to IPC's bank account. (*See* Bankr. Tr. of Oct. 18, 2016 Proceedings ("Oct. 18 Hr'g Tr.") at 6 [Doc. No. 8]) Then, over the next few days, IPC wrote checks to Hill totaling $175,000. (USTAPP at 183, Stipulation of Facts ¶¶ 8–9.) Hill deposited these funds into his personal bank account. (*Id.*) In addition to receiving these funds, Hill also opened and utilized new bank accounts in the name of IPC and Tri-Med. In June 2014, he opened an account in the name of IPC identifying himself as the owner and the only signatory on the account. (USTAPP at 184, Stipulation of Facts ¶13.) In September of 2014, he opened an account in the name of Tri-Med, again naming himself as the sole owner and signatory. (*Id.* ¶ 14.) Hill deposited $100,000 into this new Tri-Med account, and used it to write checks totaling $99,900 to himself or IPC. (*Id.*)

On December 21, 2014, Hill filed his bankruptcy petition in the Bankruptcy Court. (USTAPP at 3–59, Bankr. Pet.)

## B. Procedural Background

After Hill filed his bankruptcy petition, the Bankruptcy Court set March 16, 2015 as the deadline for interested parties to file a complaint objecting to discharge under § 727 of the Bankruptcy Code. (APP at 2, Bankr. Ct. Docket, Entry 6.) On March 10, 2015, Wiand— as receiver for Tri-Med et al.—filed a motion ("March 10 motion") asking the Bankruptcy

Court to extend the deadline to June 8, 2015, and to permit Wiand to conduct a "Rule 2004"[3] examination of Hill. (APP at 14–69, Wiand's Mot.)

In his motion, Wiand alleged that as receiver in the Florida enforcement action, he might be a creditor in Hill's bankruptcy petition. (*Id.* at 65.) Wiand claimed that evidence indicated that Hill, through his involvement with IPC, "had played a significant role in the concealment and theft of hundreds of thousands of dollars in investor funds traceable to a fraudulent investment scheme that defrauded hundreds of Florida investors." (*Id.* at 14–15.) He also indicated that his investigation as receiver "showed that nearly $1 million of funds raised from investors was transferred from Tri-Med to [IPC]" and used for purposes that were undisclosed to investors. (*Id.* at 18–19.)

Wiand also expressed concern that Hill might be committing fraud on the Bankruptcy Court by failing to disclose truthfully his financial affairs. Wiand contended that Hill had "grossly misrepresented" to the Bankruptcy Court the amount of funds he received from entities associated with the fraudulent scheme in Florida. (*Id.* at 15.) Wiand noted that his investigation had revealed that Hill had "received over $300,000 in payments from IPC during 2013 and 2014," an amount that significantly exceeded the roughly $20,000 that Hill had reported in his bankruptcy petition as having been received from Tri-Med and IPC. (*Id.* at 19.) Wiand also pointed to the $300,000 that IPC received from Tri-Med the day of the Florida court order, the $175,000 that Hill then received from IPC, and Hill's subsequent "numerous transfers to individuals and entities believed to be associated with J.

---

[3] Federal Rule of Bankruptcy Procedure 2004 provides, in pertinent part, "On motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a).

Anderson"—all transactions that Wiand alleged Hill had not reported in his bankruptcy petition. (*Id.* at 20.)

On April 2, 2015, the Bankruptcy Court granted Wiand's March 10 motion. (APP at 70–71, Bankr. Ct. Order Granting Mot.) The Bankruptcy Court extended the deadline for Wiand to object to discharge to June 8, 2015. (*Id.* at 71.) The Court also authorized Wiand to examine Hill pursuant to Rule 2004. (*Id.* at 70.)

On June 5, 2015, Wiand conducted the Rule 2004 examination of Hill. (*See* USTAPP at 100–140, Rule 2004 Examination.) On that morning, Hill also produced some tax returns and bank records to Wiand. (*See* USTAPP at 141–175.) At the examination, Wiand questioned Hill about the details surrounding the $175,000 in checks that IPC had written to Hill in the days following entry of the Florida receivership order. (*See* USTAPP at 106–07; 115–19, Rule 2004 Examination.) Hill explained that the $100,000 personal transfer from IPC was driven by the collective fear of Anderson, Hill, and the other IPC doctors that, like Tri-Med's accounts, "IPC's accounts would get shut down, too, and we would have to close the doors tomorrow." (*Id.* at 107.) Hill gave similar testimony about a $75,000 check from IPC that Hill had also deposited into his personal bank account. (*Id.* at 115–19).

On June 8, 2015, three days after the Rule 2004 Examination and on the last day Wiand could file objections to Hill's discharge, two separate parties moved the Bankruptcy Court to again extend the deadline for submitting objections. First, Wiand sought another extension to review the documents that Hill had produced at the Rule 2004 examination. (USTAPP at 60–71, Wiand's Second Mot.) At a July 29 hearing, the Bankruptcy Court

granted Wiand's motion. (*See* Bankr. Tr. of July 29, 2015 Mot. Hr'g ("July 29 Mot. Hr'g") [Doc. No. 7].) Importantly here, the Court noted that the Rule 2004 examination and document production had been necessary, because if Wiand had brought a complaint objecting to discharge based only on the allegations contained in the March 10 motion, the complaint "would have been perhaps subject to a successful Rule 8 motion or other motion under the rules for insufficient pleading." (*Id.* at 31.) The Bankruptcy Court granted Wiand's extension so that he could bring a more "fulsome complaint" and give Hill enough information to respond appropriately. (*Id.* at 32.)

The second party to move for an extension to file a complaint was the Trustee. (APP at 73–81, Trustee's Mot.) Because Federal Rule of Bankruptcy Procedure 4004(b)(1) generally provides that a party must move to extend the time to object to discharge before the initial deadline expires[4]—in this case, March 16, 2015—the Trustee brought his motion under Rule 4004(b)(2), which provides an exception to that general rule. (*Id.* at 74.) Under Rule 4004(b)(2), a motion to extend the deadline may be filed after the expiration of the original deadline if three requirements are met: (1) "the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code"; (2) "the movant did not have knowledge of those facts in time to permit an objection"; and (3) the motion is "filed promptly after the movant discovers the facts on which the objection is based." Fed. R. Bankr. P. 4004(b)(2).

---

[4] Rule 4004(b)(1) provides, "On motion of any party in interest, after notice and hearing, the court may for cause extend the time to object to discharge. Except as provided in subdivision (b)(2), the motion shall be filed before the time has expired."

The Trustee argued that all three requirements were met. First, he claimed that there was evidence that Hill had made "numerous false oaths" in his petition for discharge, which would in turn provide a basis for revocation under § 727(d) of the Bankruptcy Code. (*Id.* at 78.) As to whether he knew about these false oaths "in time to permit an objection" before March 16, the Trustee asserted that it wasn't until "[s]hortly before the [June 5] Rule 2004 examination was scheduled to occur" that he "became aware of the debtor's case and the Rule 2004 examination." (*Id.* at 74.) And as to the third requirement, the Trustee highlighted that he was filing the motion just three days after the debtor's Rule 2004 examination. (*Id.* at 78.)

Hill opposed the Trustee's motion. (*See* APP at 82–87, Debtor's Resp. in Opp'n to Trustee's Mot.) He argued that the Trustee did, in fact, have knowledge of Hill's alleged nondisclosures before March 16. (*Id.* at 82.) First, Hill argued that the word "knowledge" in Rule 4004(b)(2) should be interpreted as constructive knowledge. (*See* July 29 Mot. Hr'g at 54–56.) Second, Hill claimed that by virtue of Wiand's March 10 motion, the Trustee had such constructive knowledge. (*Id.* at 55–56.) According to Hill, the "Trustee would have received a copy of [Wiand's March 10] motion via the ECF system," and that motion contained the allegations on which the Trustee was basing his motion for an extension. (APP at 82–83, Debtor's Resp. in Opp'n to Trustee's Mot.) Hill also contended that an evidentiary hearing was necessary to determine the extent of the Trustee's pre-March 16 awareness of the March 10 motion. (July 29 Mot. Hr'g at 55.)

At the July 29 hearing, the Bankruptcy Court also granted the Trustee's motion, finding that the Trustee did not know of the relevant facts until after the original March 16

deadline had expired. (*Id.* at 60–63.) First, the Bankruptcy Court rejected Hill's arguments that constructive knowledge would suffice, finding, instead, that "knowledge" under Rule 4004(b)(2) requires actual knowledge. (*Id.* at 61.) The Bankruptcy Court also accepted as true the Trustee's testimony—buttressed by his verified motion—that no one in the Trustee's office had read the March 10 motion until "shortly before," "roughly a week, seven days" before Wiand's June 5 examination of Hill. (*Id.* at 42; 63.) Because the Bankruptcy Court "believe[d] [the Trustee] when he sa[id] he didn't know about" Wiand's motion on March 10, it was not "necessary to have an evidentiary hearing on that" as requested by Hill. (*Id.* at 63.)

But "[m]ore importantly," the Bankruptcy Court found that an evidentiary hearing on the issue would be futile. The Bankruptcy Court referenced its earlier finding that the allegations contained in the March 10 motion would not have been sufficient to support a complaint objecting to discharge. (*Id.*) Thus, even if the Trustee had read Wiand's March 10 motion, the Bankruptcy Court found that he could not have brought a complaint objecting to discharge based on the allegations contained therein, let alone before March 16. (*Id.*) In fact, "that was the whole point" of requiring the Rule 2004 examination in June. (*Id.*) Accordingly, the Bankruptcy Court saw no need for an evidentiary hearing to determine if anyone at the Trustee's office had read Wiand's March 10 motion, as it would not have changed the court's decision to grant the Trustee an extension. (*Id.*)

For similar reasons, the Bankruptcy Court stated that its interpretation of Rule 4004(b)(2) as requiring lack of actual knowledge was not outcome determinative. The Bankruptcy Court noted that even if it believed that Rule 4004(b)(2) required only

constructive knowledge—which could be imputed from the electronic service of Wiand's March 10 motion—it would not "have an impact on the outcome of this decision today." (*Id.* at 62.) The Bankruptcy Court thus granted the Trustee's motion, extending the deadline for him to file a complaint objecting to Hill's bankruptcy petition. (*Id.* at 64.) The order was entered on July 30, 2015. (APP at 120, Bankr. Order Granting Trustee Extension.)

That same day, the Trustee filed a four-count, nine-page complaint ("Complaint") seeking denial of Hill's discharge under various subsections of 11 U.S.C. § 727(a). (APP at 121–29, Compl.) Count I alleged that Hill had "transferred property with the intent to hinder, delay, or defraud creditors within one year of the filing of his bankruptcy petition," justifying denial of his petition under § 727(a)(2)(A). (*Id.* at 125.) In support of this allegation, the Complaint detailed the transfers of large sums of money that Hill made out of his personal bank account after entry of the Florida receivership order. (*Id.* at 123–25.) For example, it highlighted the $75,000 that Hill transferred to an attorney on March 11, 2014, consistent with his testimony at the Rule 2004 examination. (*Id.* at 123; USTAPP at 112–113, Rule 2004 Examination.) Similarly, the complaint highlighted an additional $25,000 that Hill transferred to a different attorney and the $7,215.15 transfer that Hill made on March 18 to cover Tri-Med's payroll. (APP at 123, Compl.)

Count II alleged that Hill "failed to keep or preserve recorded information from which his financial condition and business transactions might be ascertained," warranting denial of discharge under § 727(a)(3). (*Id.* at 125–26.) Specifically, the Complaint highlighted Hill's testimony at the Rule 2004 examination that neither he nor IPC created or maintained any records to document Hill's use of the funds that he received by check from

IPC. (*Id.* at 126.) Count III alleged that Hill had knowingly and fraudulently made false oaths in connection with his bankruptcy case, mandating denial of discharge under § 727(a)(4)(A). (*Id.* at 126–28.) The Complaint specifically charged that some of Hill's testimony at the Rule 2004 examination was false, and that he knowingly and fraudulently had omitted key pieces of information from his bankruptcy petition. (*Id.*) Finally, Count V, seeking denial of discharge under § 727(a)(5), alleged that Hill had failed to explain satisfactorily his loss of assets. (*Id.* at 128.)

The Bankruptcy Court held a trial on these claims. In a bench ruling, it denied Hill's discharge pursuant to § 727(a)(2)(A), on Count I. (*See* Oct. 18 Hr'g Tr.) The Bankruptcy Court found that Hill had made transfers before filing his bankruptcy petition "with a specific intention of removing the funds from the awareness and reach of [Wiand]," who was a creditor of Hill's at the time of the transfers. (*Id.* at 8; 12.) The Bankruptcy Court further found that Hill "knew about the receivership order and he knew that the transfers he orchestrated from IPC to himself and to or for the benefit of other entities to avoid the receivership were improper and in violation of the receiver order." (*Id.* at 8.) Because the Bankruptcy Court ruled on Count I of the Complaint and denied discharge under § 727(a)(2)(A), it found no "need to determine Counts 2, 3 and 4 under 727(a)(3), 727(a)(4) and [] 727(a)(5)." (*Id.* at 14–15.) The Bankruptcy Court issued a written order on October 19, 2016, and judgment was entered on that date. (APP at 162, Order for J.; APP at 163, J.)

In November of 2016, Hill filed the instant appeal, challenging both the Bankruptcy Court's order granting the Trustee an extension for objecting to discharge ("2015 Order") and the Bankruptcy Court's judgment ultimately denying discharge ("2016 Judgment").

(*See* Notice of Appeal.) Hill does not challenge any of the Bankruptcy Court's factual findings or legal conclusions supporting its 2016 Judgment denying discharge. Rather, Hill argues that the 2016 Judgment should be reversed because the Bankruptcy Court should not have granted the Trustee an extension of time under Rule 4004(b)(2). (Appellant's Br. at 12–15; s*ee* Statement of the Issues [Doc. No. 3].)

Before responding to Hill's appeal, the Trustee filed a motion with the Bankruptcy Court requesting that it certify the 2016 Judgment as final under Federal Rule of Civil Procedure 54(b).[5] (*See* USTAPP 185–198, Mot. to Amend J.; *see also* Stipulation Regarding Stay of Further Br. [Doc. No 12]; Order Regarding Stipulation [Doc. No. 13].) The Trustee believed that the Bankruptcy Court's 2016 Judgment denying Hill's discharge was interlocutory because it "disposed of only one of the four counts alleged" in the Trustee's Complaint. (USTAPP at 193, Mot. to Amend J.)

On March 2, 2017, the Bankruptcy Court denied the Trustee's motion. (*See* USTAPP at 201–06, Bankr. Ct. Mem. and Order.) The Bankruptcy Court stated that its 2016 Judgment

> fully and finally adjudicated the Trustee's only *claim* in the adversary proceeding: that 11 U.S.C. § 727(a) precluded Hill from receiving a discharge. To support this *claim*, the Trustee brought several *counts*, each representing a different theory and subsection of § 727(a), but all seeking the same result: the denial of Hill's discharge. In determining the first of these counts against Hill, the Judgment fully and finally adjudicated the sole claim. In doing so, the Judgment rendered the remaining counts redundant and unnecessary for entry of a final judgment.

---

[5] The parties stipulated that the Trustee would file the motion seeking certification and this Court granted a motion staying further briefing on the appeal.

(*Id.* at 203 (internal citations omitted).) The Bankruptcy Court unequivocally stated that the 2016 "Judgment is a final order," rendering certification under Rule 54(b) not only unnecessary, but amendment of the Judgment beyond the Bankruptcy Court's jurisdiction. (*Id.* at 203; 205–06.)

In response to Hill's appeal here, the Trustee first argues that this Court does not have appellate jurisdiction because the 2016 Judgment is not final. (Trustee's Br. at 35–37 [Doc. No. 14].) Alternatively, the Trustee argues that the Bankruptcy Court properly granted the Trustee's motion for a deadline extension under Rule 4004(b)(2) and that the 2016 Judgment should thus be affirmed. (*Id.* at 37–45.)

## II. DISCUSSION

### A. Jurisdiction

In an appeal from a bankruptcy court proceeding, this Court acts as an appellate court. *See* 28 U.S.C. § 158(a). Section 158(a)(1) grants the Court appellate jurisdiction "from final judgments, orders, and decrees," whereas §§ 158(a)(2)–(3) confer appellate jurisdiction from certain interlocutory orders. *See In re M & S Grading, Inc.*, 526 F.3d 363, 368 (8th Cir. 2008).

Before reaching the merits of Hill's appeal, then, the Court must address whether it has jurisdiction to do so, which in this case turns on whether the decisions Hill appeals are final, appealable orders. *See id.* ("Our jurisdiction therefore depends on whether the bankruptcy court order . . . was a final appealable order."). "[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002).

In the Eighth Circuit, finality is evaluated "more flexibly in bankruptcy cases than in other contexts." *In re Farmland Indus., Inc.*, 397 F.3d 647, 649–50 (8th Cir. 2005). When considering whether a decision by a bankruptcy court is final, this Court must consider three factors:

> (1) the extent to which the order leaves the Bankruptcy Court nothing to do but to execute the order; (2) the extent to which delay in obtaining review would prevent the aggrieved party from obtaining effective relief; and (3) the extent to which a later reversal on that issue would require recommencement of the entire proceedings.

*Lewis v. U.S., Farmers Home Admin.*, 992 F.2d 767, 772 (8th Cir. 1993) (quoting *Currell v. Taylor*, 963 F.2d 166, 167 (8th Cir. 1992)).

At the outset, the Court notes that the 2015 Order granting the Trustee an extension to file a complaint, standing alone, is not a final order reviewable by this Court. *See In re Gaines*, 932 F.2d 729, 732 (8th Cir. 1991) ("[T]he bankruptcy court's order extending the time in which to file objections was not a final, appealable order."). However, Hill may appeal that Order as part of his appeal of the 2016 Judgment provided that that Judgment itself is final. *See id.* ("The debtors retain the right to seek review of the initial order extending the time to file objections after the bankruptcy court has finally disposed of their petition. If the extension were improvidently granted . . . a reviewing court could reverse the order and vacate any subsequent actions taken pursuant to it.").

Turning to the 2016 Judgment, however, the Court concludes that it is a final judgment under the Eighth Circuit's three-factor finality framework. The first factor strongly supports this conclusion. The Bankruptcy Court's bench ruling denying Hill's discharge left it with "nothing to do but to execute the order." *Lewis*, 992 F.2d at 772.

Indeed, that is what the Bankruptcy Court did when it entered judgment the next day. And "[w]hen only mechanical or ministerial action is required of the bankruptcy court, then the order will be considered final." *Id.*

The Trustee argues that more was required of the Bankruptcy Court because its 2016 Judgment left "three of four claims for relief undecided." (Trustee's Br. at 36.) According to the Trustee, in addition to denying Hill's discharge under § 727(a)(2)(A), the Bankruptcy Court was required to determine whether to deny discharge under additional subsections of the Bankruptcy Code. (*See id.* at 40–43.)

This Court disagrees. First, the Trustee's position defies the long-established principle of judicial restraint that a court need not reach other issues when it has resolved a dispositive one. *See, e.g.*, *Fed. Trade Comm'n v. Freeman Hosp.*, 69 F.3d 260, 272 (8th Cir. 1995) ("Because our resolution of this issue is dispositive, we need not reach the other issues presented on appeal.") A court need not reach issues that would be redundant or unnecessary to its ultimate determination. *See, e.g.*, *Gen. Mills, Inc. v. Pillsbury Co.*, 378 F.2d 666, 671 (8th Cir. 1967) ("Our decision on the § 103 issue is dispositive of this appeal. No purpose will be served by considering the other attacks made on [a patent's] validity."). Here, the Bankruptcy Court denied Hill's discharge under § 727(a)(2)(A), and no purpose would have been served by considering the other bases for relief. *See In re Moss*, 266 B.R. 408, 414 (B.A.P. 8th Cir. 2001), *aff'd*, 289 F.3d 540 (8th Cir. 2002) ("To prevail on a claim for denial of discharge under section 727, the objector need only prove that one, not all, of the section 727(a) exceptions to discharge exists.")

Second, and more importantly, the Trustee's argument contradicts Eighth Circuit precedent interpreting the first factor to mean that "when the decision effectively resolves the merits of the controversy, it is final." *Lewis*, 992 F.2d at 772. Here, the "merits of the controversy" were whether Hill's discharge should be denied. In its 2016 Judgment, the Bankruptcy Court clearly resolved the issue by denying discharge. No further action by the Bankruptcy Court was needed to resolve the merits of the case. The first factor thus strongly points toward finality.

The second factor in the finality test—the extent to which the parties would be materially prejudiced by delay in obtaining appellate review—does not apply in this case. The Trustee argues that delay in obtaining review of the 2015 Order will not prejudice Hill because the "bankruptcy court has already tried the case, and it can decide the . . . Trustee's remaining claims without further litigation," at which point Hill can appeal. (Trustee's Br. at 28). But the Bankruptcy Court has nothing before it to adjudicate, as it has already disposed of Hill's case by denying discharge. In fact, the Bankruptcy Court indicated, in no uncertain terms, that its 2016 Judgment was final when it denied the Trustee's motion for certification under Rule 54(b). (*See* USTAPP at 201–04, Bankr. Ct. Mem. and Order.) Because the Bankruptcy Court will not take any additional action in this case, any consideration of delay here is inapplicable.

Finally, the third factor—whether later reversal would require recommencement of the entire proceedings—is likewise inapplicable. Again, there is no proceeding pending that could later trigger a reversal of the 2015 Order. This case may now only proceed through appeal before this Court. In fact, because Hill did not raise any substantive

challenge to the Bankruptcy Court's decision denying discharge, he has waived any review beyond the procedural challenge he raises here. *See Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived.") In sum, the Court concludes that application of the Eighth Circuit's three finality factors demonstrates that the 2016 Judgment is a final judgment.[6]

As an additional attempt to bolster his arguments that the 2016 Judgment was not final, the Trustee argues that "[p]iecemeal appeals would result if a debtor had the right to immediately appeal a bankruptcy court's ruling on only one of several claims to deny discharge." (Trustee's Br. at 37.) But as applied to Hill's case, this argument rests on a faulty premise. Hill is not appealing the Bankruptcy Court's substantive decision to deny his discharge under § 727(a)(2)(A). Rather, he is challenging the Bankruptcy Court's procedural ruling that allowed the Trustee to file a complaint in the first instance. No piecemeal litigation can result under these circumstances.

Having found that the 2016 Judgment is final, the Court has jurisdiction under 28 U.S.C. § 158(a)(1) and now turns to the merits of Hill's appeal.[7]

## B. The Merits

### 1. The Grant of an Extension

On appeal, the Bankruptcy Court's legal conclusions are reviewed *de novo* and its findings of fact are reviewed for clear error. *Tri–State Fin., LLC v. First Dakota Nat'l*

---

[6] Because the 2016 Judgment is final, the Court need not address the Trustee's arguments regarding the Bankruptcy Court's decision not to certify that judgment under Rule 54(b).

[7] Having found jurisdiction under 28 U.S.C. § 158(a)(1), the Court need not address the Trustee's additional argument that the Court also lacks jurisdiction under § 158(a)(3).

*Bank*, 538 F.3d 920, 923–24 (8th Cir. 2008). Orders denying or granting extensions of time to file an objection to discharge are reviewed for abuse of discretion. *See Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010) ("We review a district court's decision to allow a party to submit a late filing for an abuse of discretion."); *In re Sheppard*, 532 B.R. 672, 674 (B.A.P. 6th Cir. 2015) ("An order denying a motion to extend is reviewed under an abuse of discretion standard."). "The bankruptcy court abuses its discretion when it fails to apply the proper legal standard or bases its order on findings of fact that are clearly erroneous." *In re Farmland Indus., Inc.*, 397 F.3d at 651. "Under the clearly erroneous standard, we will overturn a factual finding only if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error was made." *Roemmich v. Eagle Eye Dev., LLC*, 526 F.3d 343, 353 (8th Cir. 2008) (citation and internal quotation marks omitted).

Hill argues that the Bankruptcy Court should not have granted the Trustee an extension under Rule 4004(b)(2). However, the parties disagree as to the standard of review that this Court should apply to the Bankruptcy Court's decision to grant the extension. Hill urges this Court to review the Bankruptcy Court's interpretation of Rule 4004(b)(2) *de novo* and reverse. (Appellant's Br. at 6.) He primarily argues that the Bankruptcy Court committed legal error by interpreting the word "knowledge" in Rule 4004(b)(2) to mean actual knowledge and not constructive knowledge. (Appellant's Br. at 15–20.) The Trustee, on the other hand, argues that because the Bankruptcy Court's legal interpretation of Rule 4004(b)(2) was not outcome determinative, the Court need not reach this legal question.

(Trustee's Br. at 51–52.) Instead, he urges the Court to uphold as not clearly erroneous the Bankruptcy Court's factual finding that the Trustee did not have knowledge—whether actual or constructive—"in time to permit an objection" before the original March 16 deadline. (*Id.* at 46–51.)

The Court finds that a *de novo* interpretation of Rule 4004(b)(2) is unnecessary in this case, as the Bankruptcy Court's 2015 Order granting the Trustee an extension clearly rested on that court's factual finding that the Trustee had neither actual nor constructive knowledge of sufficient facts to bring an objection before the deadline. In relevant part, Rule 4004(b)(2) requires that "(B) the movant . . . not have knowledge of [relevant facts] *in time to permit an objection*" (emphasis added).[8] It is true, of course, that the Bankruptcy Court interpreted the word "knowledge" in that clause to mean actual knowledge, a conclusion Hill challenges here. But, critically, the Bankruptcy Court stated that even if the standard under the Rule were constructive knowledge, it would "[not] have an impact on the outcome of this decision today." (July 29 Mot. Hr'g at 62.) The Bankruptcy Court reasoned that even under a constructive knowledge standard, it would nevertheless grant the Trustee's motion. The Court found that Wiand's March 10 motion, which Hill argued served as the basis for the Trustee's "knowledge," did not contain "sufficient information . . . for a

---

[8] Hill argues that this Court should require a party to bring a motion to extend under Rule 4004(b)(1), instead of Rule 4004(b)(2), if, at any time before the initial deadline, the party discovers any potential basis for possibly bringing a complaint. (Appellant's Br. at 18.) But Hill's argument controverts the plain text of Rule 4004(b)(2). That Rule conditions the propriety of a Rule 4004(b)(2) motion on the party's lack of knowledge "in time to permit an objection." It says nothing of barring parties from bringing a Rule 4004(b)(2) motion if, for instance, they theoretically could have brought a Rule 4004(b)(1) motion to extend upon discovering, just a few days before the deadline, a possible basis for denial of a debtor's discharge.

complaint to be filed" by the March 16 deadline. (*Id.* at 63.) In fact, the Court noted, the scarcity of facts in the March 10 motion was "the whole point" of conducting the June 5 Rule 2004 examination of Hill. (*Id.*) This factual finding drove the Bankruptcy Court's ruling, and not its interpretation of the word "knowledge" contained in Rule 4004(b)(2).

This Court concludes that the Bankruptcy Court's factual finding was not clearly erroneous, as it is supported by sufficient evidence in the record. This Court need only look at the contents of the Complaint that the Trustee ultimately filed to know that six days were not sufficient to: (1) review the March 10 motion; (2) confirm the validity of the allegations contained therein and develop the factual record; (3) conduct legal analysis; and (4) compose a complaint that complied with the heightened pleading standards of Federal Rule of Civil Procedure 9(b).[9] Under such circumstances, the Bankruptcy Court's factual findings were not clearly erroneous. *Cf. In re Arnold*, 162 B.R. 775, 778 (Bankr. E.D. Mich. 1993) ("Because denial of a discharge is so serious a matter, a trustee ought not lightly bring an action under § 727(a).").

In fact, the counts in the Trustee's Complaint specifically relied on facts either unveiled for the first time at the June 5 examination, or explained then in more detail. For instance, at the examination, Hill explained the reasons and motivations behind the large transfer of funds into and out of his personal bank account after entry of the Florida receivership order. The Trustee would not have had this level of detail even if he had read the March 10 motion. And, critically, the Bankruptcy Court denied Hill's discharge under a

---

[9] Federal Rule of Bankruptcy Procedure 7009 makes Rule 9 of the Federal Rules of Civil Procedure applicable to adversary proceedings.

section of the Bankruptcy Code that requires proof of a mental state. *See* 11 U.S.C. § 727(a)(2) ("[T]he debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed— (A) property of the debtor, within one year before the date of the filing of the petition.") The specifics of Hill's mental state were not revealed until his June 5 examination.

Because the Bankruptcy Court did not make a clearly erroneous factual finding, and this finding formed the basis for the Bankruptcy Court to grant the Trustee an extension for objecting to discharge, this Court finds that there was no abuse of discretion.

### 2. The Denial of Hill's Request for an Evidentiary Hearing

In the alternative, Hill argues that even if the Bankruptcy Court's legal interpretation of the word "knowledge" contained in Rule 4004(b)(2) was correct, the Bankruptcy Court nonetheless abused its discretion by denying Hill's request for an evidentiary hearing and granting the Trustee an extension based only on the Trustee's testimony and verified motion claiming that he had no actual knowledge before the relevant time period. (Appellant's Br. at 20–21.) The Court "review[s] evidentiary rulings for an abuse of discretion that is both clear and prejudicial, affecting a substantial right of the objecting party." *In re Hernandez*, 860 F.3d 591, 601 (8th Cir. 2017). However, "an allegedly erroneous evidentiary ruling does not warrant a new trial unless the evidence was so prejudicial that a new trial would likely produce a different result." *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 833 (8th Cir. 2005) (internal quotations and alterations omitted).

Here, Hill specifically argues that the Bankruptcy Court misapplied Federal Rule of Evidence 602 when it accepted as true, over Hill's objection, the Trustee's testimony that "nobody in my office read" Wiand's March 10 motion. (Appellant's Br. at 20.) Hill points out that Rule 602 allows a witness to testify "to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." (*Id.* at 20–21.) Hill argues that no such evidence was proffered either at the motions hearing or at a separate evidentiary hearing, affecting Hill's "right to cross-examine the U.S. Trustee and his other employees regarding their knowledge." (*Id.* at 21.) According to Hill, the Bankruptcy Court's error should be corrected "by reversal of the judgment of denial of discharge." (*Id.*)

The Court need not evaluate the Bankruptcy Court's evidentiary ruling because, even if it was erroneous, Hill suffered no prejudice by it. *See In Re Hernandez*, 860 F.3d at 601 (declining to review the merits of the evidentiary challenge where no prejudice occurred). The Bankruptcy Court found that an evidentiary hearing to determine if anyone at the Trustee's office had read the March 10 motion was unnecessary because it would make no difference to its decision to grant the Trustee's motion. The Bankruptcy Court concluded that an evidentiary hearing would not do "[Hill] much good" because even if someone from the Trustee's office had read the motion on March 10, it did not contain enough information for the Trustee to file a complaint before March 16. (July 29

Mot. Hr'g at 63.) Thus, Hill suffered no prejudice as a result of the Bankruptcy Court's evidentiary ruling.[10]

Because the Bankruptcy Court did not abuse its discretion in granting the Trustee an extension to file a complaint, and Hill raises no other challenge to the Bankruptcy Court's denial of discharge, his appeal is dismissed.

## III.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. The Bankruptcy Court's July 30, 2015 Order and its October 19, 2016 Judgment are **AFFIRMED**.

Dated: October 19, 2017              s/Susan Richard Nelson
                                     SUSAN RICHARD NELSON
                                     United States District Judge

---

[10]   At oral argument before this Court, Hill argued—for the first time—that the Bankruptcy Court should have conducted a hearing to determine if the Trustee had any knowledge before March 10. First, "issues raised for the first time on appeal are ordinarily not considered by an appellate court as a basis for reversal." *In re Hervey*, 252 B.R. 763, 767 (B.A.P. 8th Cir. 2000) (citing *Von Kerssenbrock–Praschma v. Saunders*, 121 F.3d 373, 375–76 (8th Cir. 1997). But even if considered by this Court, Hill's argument lacks merit. To request an evidentiary hearing on this ground, Hill needed to produce some evidence before the Bankruptcy Court, other than mere allegations, that the Trustee might have had knowledge of Hill's case even before March 10—evidence he did not proffer. *See In re Hansmeier*, 558 B.R. 299, 301–02, 302 n.7 (B.A.P. 8th Cir. 2016.)